UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO.: 5:08-CV-00210-TBR

KRISTINA D. LONG                                                                    PLAINTIFF

v.

DELTA AIR LINES, INC. and
MARGUERITE H. TAYLOR, ESQ.                                          DEFENDANTS

MEMORANDUM OPINION

This matter is before the Court upon Defendants, Delta Air Lines, Inc. and Marguerite H. Taylor, Esq.'s, Motion to Dismiss (Docket #6). Plaintiff, Kristina D. Long, has filed a response (Docket # 7). Defendants have filed a reply (Docket # 11). Plaintiff has filed a sur-reply (Docket #18). This matter is now ripe for adjudication. For the following reasons, Defendants' Motion to Dismiss is GRANTED.

BACKGROUND

Plaintiff began working for Delta in 1995. Over a period of approximately ten years, Plaintiff was transferred to several different locations and positions within the company. In 2005, Plaintiff was transferred to Lexington, Kentucky.

On September 14, 2005, Delta and certain of its subsidiaries commenced a voluntary case under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York. Notice of commencement of the Delta bankruptcy proceedings was sent to Plaintiff, as well as all other Delta employees, between September 27, and September 30, 2005. On June 22, 2006, additional notice was sent to Plaintiff advising Plaintiff if she had a pre-petition claims she must file a Proof of Claim by the Bar Date of August 21, 2006; if she had a post petition claim she should file a request of payment pursuant to

11 U.S.C. § 503 of the Bankruptcy Code; and if she had questions she could contact the Delta Claims Processing Center.

On August 9, 2006, Plaintiff was called into the office of her station manager, Michael Roberts. Rhonda Johnson and Sue Moir from Delta's Revenue Control were also present. Plaintiff was informed there were concerns about her ticket bookings for Ken Bratton, a customer of Delta. Plaintiff alleges Bratton is a disabled passenger as he is autistic and alleges he requires special accommodations in order to be able to fly. Plaintiff alleges that she was informed that Delta had observed her for over a year and a half performing these transactions improperly. Plaintiff stated she was informed that Delta's concerns regarding her handling of the ticketing of this passenger were grounds for termination or suspension of her employment.

Plaintiff was advised to submit a written statement regarding the accusations. After submitting her statement, Plaintiff worked for another week before being suspended without pay, pending an investigation. Nearly two months after her suspension, Plaintiff states Roberts informed her that she had the choice to either resign or be terminated. Plaintiff was terminated in January of 2007.

Plaintiff obtained counsel who wrote Delta on behalf of Plaintiff. On January 30, 2007, Marguerite Taylor ("Taylor"), contacted Plaintiff's counsel by letter stating that she was reviewing Plaintiff's matter and all future correspondence should be directed to Taylor. On February 22, 2007, Plaintiff's contacted Taylor via e mail regarding Plaintiff's case. Taylor responded via e mail in attempt to set up a telephone conference. On February 28, 2007, Taylor contacted Plaintiff's counsel twice via e mail regarding the telephone conference. On March 1, 2007, a telephone conference was held between Plaintiff's counsel and Taylor. Taylor contacted Plaintiff's counsel again via e mail

2

on April 11, 2007, to set up another telephone conference. A second telephone conference was had on April 17, 2007.  Plaintiff states that during these conversations Taylor was specifically warned by Plaintiff's Kentucky counsel that any action taken to terminate Plaintiff in response to Plaintiff's assistance to a potentially disabled customer would be retaliatory.  At no time during these conversations did Plaintiff or Plaintiff's counsel bring a claim before the Bankruptcy Court.

On April 25, 2007, the Bankruptcy Court issued an Order Confirming Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code ("Confirmation Order"). The Effective Date of the Confirmation Order was April 30, 2007.   The Confirmation Order contained both a discharge provision and an injunction provision.

Plaintiff filed the present action on December 23, 2008, claiming retaliation in violation of the Americans with Disabilities Act ("ADA") and the Kentucky Civil Rights Act; discrimination on the basis of sex in violation of the Civil Rights Act and Kentucky Civil Rights Act; and termination in violation of public policy under the ADA and Kentucky Civil Rights Act. Defendants now move the Court to dismiss this action.

## ANALYSIS

### I. Claims Against Delta

#### A. Standard: 12(b)(6) Failure to State a Claim on which Relief can be Granted

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999) (citing *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995)).  To survive a Rule 12(b)(6) motion to dismiss, the complaint must include "only enough facts to state a claim

to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).

The "[f]actual allegations in the complaint must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* at 1965 (internal citation and quotation marks omitted). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* A plaintiff must allege sufficient factual allegations to give the defendant fair notice concerning the nature of the claim and the grounds upon which it rests. *Id.* at 1965. Additionally, "the conclusory nature of particular allegations cannot alone justify dismissing a complaint." *Back v. Hall*, 537 F.3d 552, 558 (6th Cir. 2008) (dismissal not appropriate although one essential element of the claim was pled in a conclusory manner).

### B. Bankruptcy Discharge of Claims against Delta

 Defendants first assert that Plaintiff's Complaint must be dismissed because the claims against Delta were discharged by the bankruptcy court when the Confirmation Plan was accepted. Delta states its reorganization plan was confirmed in April 2007. The alleged discrimination and retaliation occurred against Plaintiff from August 2006 until January 2007. Delta asserts that Plaintiffs claims must be dismissed because the claims accrued in January 2007, prior to Delta's discharge in bankruptcy.

Generally, a Court deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) cannot consider facts outside the pleadings. However, in this case, Defendants have attached to their Motions to Dismiss copies of orders surrounding Delta's bankruptcy petition. These orders are public records from United States Bankruptcy Courts and, therefore, possess the requisite level of reliability. Consideration of the attachments does not require conversion of the

4

motion into one for summary judgment under Federal Rule of Civil Procedure 56.  *Wyser-Pratte Management Co., Inc. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005) (holding "the court may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice").

     "By operation of the Bankruptcy Code, confirmation of a reorganization plan 'discharges the debtor from any debt that arose before the date of confirmation.'" *In re Travel Agent Commission Antitrust Litigation*, No. 07-4464, 2009 WL 3151315, at *3 (6th Cir. Oct. 2, 2009) (citing 11 U.S.C. § 1141(d)). Additionally, the confirmed reorganization plan is binding on the debtor and any creditor. 11 U.S.C. § 1141(a). "Debt" is defined in the Bankruptcy Code as "liability on a claim." 11 U.S.C. § 101(12).  A "claim" is defined broadly to include a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A).   The Supreme Court noted, "Congress intended this language to adopt the broadest available definition of 'claim.'" *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991).  "Congress adopted an all-encompassing definition of 'claim' so that 'all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case.'" *In re Travel Agent Commission Antitrust Litigation*, No. 1:03-cv-30000, 2007 WL 3171675,  at *7 (N.D. Ohio Oct. 29, 2007) (citations omitted), *aff'd*,  No. 07-4464, 2009 WL 3151315 (6th Cir. Oct. 2, 2009). "Like any other 'claim,' a suit alleging employment discrimination falls under the definition provided by Congress in § 101(5)(A)." *Conroy v. Delta Airlines, Inc.*, No. 07-61890-CIV, 2008 WL 1994830, at *1 (S.D. Fla. May 8, 2008).

     Several courts, including the Sixth Circuit, have held that an employee or former employee's

claim arising out of events that occurred before the date of the Confirmation Order in her employer's Chapter 11 bankruptcy are barred and the Confirmation Order requires the dismissal of all such claims. *In re Travel Agent Commission Antitrust Litigation*, No. 07-4464, 2009 WL 3151315, at *3 (6th Cir. Oct. 2, 2009); *Garland v. US Airways, Inc.*, Nos. 06-5191, 07-1115, 07-1452, 07-1672, 07-1773, 07-1876, 07-1999, 2008 WL 564694, at *2 (3rd Cir. March 3, 2008) (discrimination claims based on termination were discharged by confirmation of US airways bankruptcy plan); *Conroy v. Delta Airlines, Inc.*, No. 07-61890-CIV, 2008 WL 1994830, at *1 (S.D. Fla. May 8, 2008) (plaintiff barred from bringing disability discrimination claims as to his termination which occurred pre-confirmation); *Carter v. Safety-Kleen Corp.*, No. 06-CV-12947-CM-GAY, 2007 WL 1180581, at *4 (S.D.N.Y. March 14, 2007) (discrimination claims were dismissed as discharged by bankruptcy); *Cross v. K. B. Toys*, No. 05-C-6137, 2006 WL 2437831, at *2-3 (N.D. Ill. Aug. 22, 2006) (employment claim was barred when it arose from post-petition and pre-confirmation termination); *O'loghlin v. County of Orange*, 229 F.3d 871, 874 (9th Cir. 2000) (pre-confirmation date employment claims properly dismissed as they were discharged in defendant's bankruptcy proceedings); *Kresmery v. Service America Corp.*, 227 B.R. 10, 13 (D. Conn. 1998) (discharging post-petition, pre-confirmation discrimination claims); *McSherry v. Trans World Airlines, Inc.*, 81 F.3d 739, 740-41 (8th Cir. 1996) (plaintiff's employment claims arose on date of termination, pre-confirmation, and were thus discharged in defendant's bankruptcy).

Delta's confirmed reorganization Plan states that the plan

shall discharge all existing debts and Claims, and shall terminate all Interests of any kind, nature or description whatsoever against or in the Debtors or any of their assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code . . . . [U]pon the Effective Date, all existing Claims against the Debtors . . . shall be, and shall be deemed to be, discharged and terminated, and all holders of Claims . . . . shall be precluded and enjoined from asserting against the Reorganized Debtors .

> . . any other or further Claim . . . based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a Proof of Claim and whether or not the facts or legal bases therefore were known or existed prior to the Effective Date.

Additionally, the plan states

> all persons or entities who have held, hold or may hold Claims. . . . and all other parties in interest . . . are permanently enjoined, from and after the Effective date, from (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim . . . against the Debtors [or] Reorganized Debtors or property of any Debtors or Reorganized Debtors. . . .

Therefore, under Delta's confirmed reorganization plan, on the Effective Date, all claims against Delta were satisfied, discharged, and released in full and any claim holders were permanently enjoined from bringing an action against Delta. The Effective Date stated in the confirmed plan was April 30, 2007.

Plaintiff's claims arise from her suspension and termination. Plaintiff was suspended in August of 2006 and was terminated in January of 2007. Any of the actions which took place during this time period are post-petition and pre-confirmation. These claims were therefore discharged on April 30, 2007. Other courts have held that claims similar to Plaintiff's are considered claims from the date of the termination or unlawful action, rather than when Plaintiff was cognizant of the claim. *Garland v. US Airways, Inc.*, Nos. 06-5191, 07-1115, 07-1452, 07-1672, 07-1773, 07-1876, 07-1999, 2008 WL 564694, at *2 (3rd Cir. March 3, 2008) (holding "Garland's 'right to payment'(disputed, of course) on his Title VII . . .claim[] arose when he was terminated from his position at US Airways"); *O'loghlin v. County of Orange*, 229 F.3d 871, 874 (9th Cir. 2000)*; McSherry v. Trans World Airlines, Inc.*, 81 F.3d 739, 740-41 (8th Cir. 1996) (holding plaintiff's Title VII "claim accrued at time of termination, not at the time he received his right to sue letter"). In *O'loghlin*, the court explained, "a claim arises, for purpose of discharge in bankruptcy, at the time

7

of the events giving rise to the claim, not at the time the plaintiff is first able to file suit on the claim." 229 F.3d at 873.  Plaintiff's claims accrued between August 2006 and January 2007. Plaintiff never raised this claim before the bankruptcy court in any form. Plaintiff's claims against Delta are discharged by the Confirmation Plan effective April 30, 2007, and Plaintiff is enjoined from bringing any action against Delta regarding any claims that arose prior to April 30, 2007.

Plaintiff asserts two theories to avoid dismissal of her claim. First, Plaintiff argues that Plaintiff's case is not within the jurisdiction of the bankruptcy court. Plaintiff explains, "'for the purpose of determining whether a particular matter falls within bankruptcy jurisdiction, . . . it is necessary only to determine whether a matter is at least 'related to' the bankruptcy.'" (citing *In re Time Const.*, 43 F.3d 1041, 1044-45 (6th Cir. 1995)). Plaintiff cites case law which holds "[t]he test of 'whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'" *In re Time Const.*, 43 F.3d at 1045.  Plaintiff argues that her case is not "related to" the bankruptcy since the bankruptcy was concluded in April 2007 and an award in this proceeding would not have an effect upon the bankruptcy estate being administered prior to April 2007.  Plaintiff further asserts that her claim against Taylor was not related to the bankruptcy.

The civil proceeding in this case, although filed after bankruptcy had concluded, became a claim subject to the bankruptcy prior to the effective date of the Confirmation Plan; as stated above, Plaintiff's cause of action was a claim on the date of her suspension and termination.  Because this claim arose prior to the effective date of the Confirmation Plan, the claim of Plaintiff was "related to" the bankruptcy action;  the damages sought by Plaintiff could conceivably have had an effect on the estate being administered in bankruptcy.  This proceeding would have been within the

8

jurisdiction of the bankruptcy court; however it has been discharged by the entering of the Confirmation Order.

In *Sanders Confectionery Products v. Heller Financial, Inc.*, the Sixth Circuit held "[g]enerally, bankruptcy jurisdiction does not extend to actions between third parties because the action would not be 'related to' a bankruptcy proceeding." 973 F.2d 474, 483 (6th Cir. 1992). Therefore, the claims of Plaintiff against Taylor are not effected by the bankruptcy proceeding as Taylor was not a party to the bankruptcy.

Second, Plaintiff argues that, even if the bankruptcy court had jurisdiction over her claims, the bankruptcy proceedings did not provide Plaintiff with the means to present her employment discrimination and retaliation claims for redress. Defendants argue that Plaintiff was sent a letter instructing that: 1) if she had a pre-petition claim against Delta, she must file the Proof of Claim form by the Bar Date of August 21, 2006; 2) if she had a claim arising after the September 14, 2005, bankruptcy petition, she was to file a request for payment pursuant to 11 U.S.C. §503 of the Code; and 3) if she had any questions she could contact the Delta Claims Processing Center. Plaintiff asserts that the option of filing for payment pursuant to 11 U.S.C. § 503 provided Plaintiff with no real recourse either. Defendants respond that if Plaintiff felt bankruptcy did not provide an adequate remedy, the proper action on the part of Plaintiff would be to object to the Confirmation Order, rather than collaterally attack the Confirmation Order before the district court in another district.

In *Celotex Corp. v. Edwards*, the Supreme Court stated that the proper course of action for a party believing an injunction entered by the bankruptcy court improper was to "challenge it in the Bankruptcy Court, like other similarly situated . . . creditors have done." 514 U.S. 300, 313 (1995). Similarly, in the case at bar, if Plaintiff believed the bankruptcy court did not provide an adequate

remedy she should have raised her claims and challenged the actions of the bankruptcy court before the bankruptcy court, rather than carrying them to the district court in another district.

## II. Claims Against Attorney Taylor

### A. Standard: 12(b)(2) Lack of Personal Jurisdiction

The plaintiff bears the burden of establishing jurisdiction. *Third Nat'l Bank v. Wedge Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989).  Where, as here, there is no evidentiary hearing on the motion, the plaintiff need only make a prima facie showing of jurisdiction to avoid the motion to dismiss.  *Id.*  The Court must consider the pleadings and affidavits in a light most favorable to the non-moving party, and cannot weigh the controverting assertions of the party seeking dismissal. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). "However, only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

In a diversity action, the Court must look to the law of the forum state to determine whether personal jurisdiction exists.  *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005); *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). "A Court's exercise of personal jurisdiction over a nonresident defendant is appropriate only if it meets the states's long-arm statute and constitutional due process requirements." *Id.*  Kentucky's long arm statute states in relevant part:

> A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:
> 1. Transacting any business in this Commonwealth;
> 2. Contracting to supply services or goods in this Commonwealth;
> 3. Causing tortious injury by an act or omission in this Commonwealth;
> 4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or

consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth.

KRS §454.210(2)(a).

The Court's exercise of jurisdiction comports with due process when the defendant has sufficient minimal contacts such that "traditional notions of fair play and substantial justice are not offended." *Id.* at 615-16 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The frequency of contacts is not determinative; the defendant's conduct must be such that she "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The Kentucky long-arm statute has been understood to reach the limit permitted by the Constitution, thus the single issue is whether the jurisdiction sought is within the requirements of due process. *Tobin v. Astra Pharm. Prods., Inc.*, 993 F.2d 528, 542-43 (6th Cir. 1993).

"The minimum contacts requirement may be satisfied by a showing of either general jurisdiction or specific jurisdiction." *Fortis Corporate Ins. v. Viken Ship Management,* 450 F.3d 214, 218 (6th Cir. 2006)*; Fairbrother v. American Monument Foundation, LLC*, 340 F.Supp.2d 1147, 1153 (D.Colo. 2004). General jurisdiction over a nonresident requires a showing of continuous and systematic contacts with the forum state. *Aristech Chemical Intern. Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624 (6th Cir. 1998); *see Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984). In order for a nonresident to be subject to the jurisdiction of the court under specific jurisdiction, i.e., for specific claims asserted, those claims must arise out of or be related to activities that were significant and purposely directed by the defendant at a resident of the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985).

11

The following criteria have historically been employed to determine if specific personal jurisdiction is appropriate:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Tobin*, 993 F.2d at 542-43 (quoting *Theunissen*, 935 F.2d at 1460).

### B. Personal Jurisdiction over Taylor

Defendant asserts that personal jurisdiction over Taylor is improper as it is not authorized by Kentucky's Long Arm Statute or the due process clause.  Plaintiff maintains that personal jurisdiction over Taylor is authorized by Kentucky's Long Arm statute, although Plaintiff does not reference a specific element of the Long Arm Statute which is reached.  Plaintiff states only that personal jurisdiction over Taylor meets the requirements of due process.

It is undisputed that there is no general jurisdiction of the Court over Taylor. The Court must, however, determine if there is specific jurisdiction over Taylor as relates to the specific claims for retaliation and discrimination. Specific jurisdiction is consistent with due process if the three part test is met: whether the defendant purposefully availed herself of the privilege of the State; the cause of action arises from defendant's activities; and the exercise of jurisdiction is reasonable.

First, the Court must examine if Taylor purposefully availed herself of the privilege of acting in Kentucky or causing consequences in Kentucky.  Under the "purposeful availment" requirement, the Court must determine if Taylor's contact is merely collaterally related to Kentucky, or if it is the kind of substantial relationship with the forum state that invokes, by design, the benefits and protections of its laws.  *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000).  "Th[e]

'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Id.* at 721-22.

Defendants assert that Taylor has not purposefully availed of Kentucky by acting as a General Attorney for Delta. Plaintiff contends that Taylor has purposefully availed herself of the privilege of acting in Kentucky through her multiple contacts regarding Plaintiff's alleged retaliatory termination via e mail, letter, and telephone.

Several courts have held that personal jurisdiction is not proper over a non-resident attorney who gave legal advice in another state regarding a matter taking place in the forum state. *Nichols v. Costa*, 794 F. Supp. 165, 167 (W.D.Pa.1992) (held no personal jurisdiction when out of state attorney provided basic procedural information and typed and notarized two affidavits); *NAWA USA, Inc. v. Bottler*, 533 F. Supp. 2d 52, 58 (D.D.C. 2008) (allegation of providing legal advice is insufficient to establish personal jurisdiction).

Plaintiff points to *Walk Haydel & Associates, Inc. v. Coastal Power Production Co.*, for the proposition that it "does not take much" for a nonresident attorney to establish minimum contacts within a forum and even "a single act by a nonresident defendant attorney toward the forum state can support a finding of minimum contacts." 517 F.3d 235, 244 (5th Cir. 2008). In *Walk Haydel & Associates*, however, the single act at issue involved physical presence in the forum state. *Id.* The other cases cited by the Fifth Circuit in *Walk Haydel & Associates* also involved an attorney's visit to the forum state. *Id.* In the case at bar, it is undisputed that Taylor was never present in Kentucky. Additionally, in *Walk Haydel & Associates*, the plaintiff pointed to hundreds of communications generating over 3,400 pages of documents. *Id.* at 245. The communications in the case at bar were not nearly so extensive. While persuasive authority, this case appears to be quite distinguishable

13

from the case at bar.

Importantly, the Sixth Circuit has held that general counsel for a race-car sponsor did not purposefully avail himself of Tennessee court when, in response to communication from a race-car owner, he engaged in several communications into Tennessee via telephone, mail and e mail.   *Rice v. Karsch*, 154 F. App'x. 454 (6th Cir. 2005). The court found important the fact that the plaintiff, Rice, had initiated the communications it now argued were the basis for personal jurisdiction. *Id.* at 461.  The court also found it key that these contacts occurred in the context of acting as general counsel. *Id.* The court explained:

> Moreover, Karsch's phone, mail, and e-mail contacts with Rice and Lowery in Tennessee occurred solely because Pagan Lewis Motors, although a Texas corporation, chose to have offices in Tennessee, not because Karsch sought to further his personal business or to create 'continuous and substantial' consequences there. Karsch's contacts were precisely the type of 'random,' 'fortuitous,' and 'attenuated' contacts that the purposeful availment requirement is meant to prevent from causing jurisdiction. In other words, what the case at bar comes down to, as we see it, is that Karsch, as an employee of Merchantonline.com, in response to correspondence from Rice . . . , engaged in several communications into Tennessee via telephone, mail and e-mail . . . . This does not constitute a purposeful availment of the privilege of transacting business in Tennessee, so as to invoke the benefits and protections of Tennessee law. To hold otherwise would be to offend the 'traditional notions of fair play and substantial justice' of which the Supreme Court spoke in *International Shoe*.

*Id.* at 463.

In this case, Taylor was employed as General Attorney for Delta and resided in Atlanta, Georgia.  She provided legal counsel to Delta representatives in Atlanta regarding related legal issues and responded to correspondence from Plaintiff's counsel. Evidence of the following communications was provided by Plaintiff in order to establish personal jurisdiction:

1/25/07       Letter from Plaintiff's attorney to Taylor

1/30/07       Letter from Taylor to Plaintiff's attorney

14

| 2/22/07 | E mail from Plaintiff's attorney to Taylor |
| 2/27/07 | E mail from Taylor to Plaintiff's attorney |
| 2/27/07 | E mail from Plaintiff's attorney to Taylor |
| 2/28/07 | E mail from Taylor to Plaintiff's attorney |
| 3/01/07 | Telephone conversation |
| 3/22/07 | Letter from Plaintiff's attorney to Taylor |
| 4/09/07 | E mail from Plaintiff's attorney to Taylor |
| 4/11/07 | E mail from Taylor to Plaintiff's attorney |
| 4/17/07 | Telephone conversation |

There is no evidence or allegation that Taylor has ever been an owner, officer, or member of the board of directors of Delta.  There is no evidence or allegation that Taylor was a decisionmaker regarding the plaintiff's employment or termination. Plaintiff alleges in her Complaint "Mrs. Taylor committed unlawful employment practices in the Commonwealth of Kentucky."

Taylor, in regard to the employment situation at issue, acted to provide legal counsel to her employer and client, Delta, and its representatives primarily in Atlanta, Georgia.  Taylor responded to contact initiated by Plaintiff's attorney in Kentucky.  The contacts listed by Plaintiff as those sufficient for personal jurisdiction by a court sitting in Kentucky are all a result of contact initiated by Plaintiff's attorney. Taylor's phone, mail, and e mail contacts with Kentucky were solely because Plaintiff's attorney was located in Kentucky, not because Taylor sought to further her own personal agenda.  The Court finds Taylor did not purposefully avail herself of the privilege and protection of Kentucky's laws. Because the Court finds Taylor has not purposefully availed herself of the forum state, the Court need not determine whether the other two factors are met.  The Court finds

15

personal jurisdiction as to Taylor is improper.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED.

An appropriate order shall be issued.